Terry E. Epperson v. Oscar W. White.*

(Knoxville. September Term, 1927.)

Opinion filed, November 21, 1927.

1. WILLS. JOINT WILL. PROBATE.

While the earlier cases pronounce against the validity of joint wills, the more modern decisions uphold such wills and declare them not contrary to public policy. (Post, p. 160.)

Citing: 28 R. C. L. 167, 40 Cyc., 2110, et seq.; Schouler on Wills, 5 Ed., sec. 456, et seq.; Page on Wills, sec. 65, et seq.; Darlington v. Pultney, 1 Cowp. 260; Hobson v. Blackburn, 1 Add., 277; Clayton v. Liverman, 2 Dev. & B. (N. C.), 588; Walker v. Walker, 14 Ohio St., 175, 82 Am. Dec., 474; Hershey v. Clark, 35 Ark., 17, 37 Am. St. Rep., 1; Bank v. Bliss, 67 Conn., 317.

2. WILLS. JOINT WILL. PROBATE.

Where the will is of such a nature that each will could be treated as a separate disposition by each testator of his individual property it would be entitled to probate on the death of each testator as the last will and testament of that testator. (Post, p. 161.)

Citing: Schumaker v. Schmidt, 44 Ala., 454, 4 Am. Rep., 135; Frazier v. Patterson, 243 Ill., 80; Gerbrich v. Freitag, 213 Ill., 552, 104 Am. St. Rep., 234, 17 Anno. Cas. 1003; Lewis v. Scofield, 26 Conn., 452, 86 Am. Dec. 404; Evans v. Smith, 28 Ga., 98, 73 Am. Dec., 751; Betts v. Harper, 39 Ohio St., 639, 48 Am. Rep., 477.

3. WILLS. CONSTRUCTION.

That which is clearly implied is as plainly declared as that which is expressed. (Post, p. 163.)                    ?

4. WILLS. CONSTRUCTION.

A paragraph of a joint will which undertakes to make a disposition of the property under certain circumstances during the lives of the testators can have no force as a testamentary disposition of property. (Post, p. 164.)

Citing: McDonald v. Ledford, 140 Tenn. (13 Thomp.), 471.

5. WILLS. CONSTRUCTION.

A joint will which makes a gift to one party "in consideration of the faithful compliance with the provisions and condition of this our last will" could not be complied with until the last of the testators had died, and then only the gift or devise to the beneficiary would become complete. (Post, p. 164.)

6. WILLS. CONSTRUCTION. SPECIAL LEGACIES.

Where a joint will provided for the payment of special legacies to be paid "within the time of two years after the death of both of us" said legacies were charged against the joint estate and it could not be determined what part of them was to be paid out of the estate of the deceased testator. (Post, p. 164.)

7. WILLS. JOINT WILL. PROBATE. VESTITURE.

If a will executed by a husband and wife devising property owned by each testator, to take effect on the death of the survivor, should be admitted to probate, the gifts therein of said testator would have to take as executory devises upon the death of the first of the testators. (Post, p. 165.)

8. WILLS. EXECUTORY DEVISE.

In case of an executory devise where a freehold is limited to commence in futuro upon a contingency, until the contingency happens, the fee passes in the usual course of descent to the heirs at law. (Post, p. 165.)

Citing: 4 Kent Com., 269.

9. WILLS. TIME OF TAKING EFFECT.

A will must take effect at the death of the testator, or not at all. (Post, p. 165.)

10. WILLS. POWER OF DISPOSITION. STATUTE.

The power to dispose of property by a will, or real estate at least, is not a natural or constitutional right and may be limited and regulated by legislation. (Post, p. 166.)

Citing: Martin v. Stovall, 103 Tenn. (19 Pick.), 1; Buchanan v. Matlock, 27 Tenn. (8 Hump.), 890; Davis v. Baugh, 33 Tenn. (1 Sneed), 477; Pritchard on Wills, sec. 76.

11. WILLS. POWER OF DISPOSITION. STATUTE.

The statute did not confer power to dispose of property by an instrument to remain suspended and in abeyance for an indefinite

period of time after a testator's death, but was efficient at the death of the testator. (Post, p. 166.)

Citing: Act of 32, Henry VIII.

## 12. WILLS. CONSTRUCTION. DISTRIBUTION.

If a person shall undertake to appoint her property by an instrument contrived to have delayed operation and effect—such an instrument as the law has not authorized—this court cannot legislate and promulgate a new agency for the distribution of a decedent's estate. (Post, p. 167.)

---

*Headnotes 1. Wills, 40 Cyc., p. 2114; 2. Wills, 40 Cyc., p. 1421; 3. Wills, 40 Cyc., p. 1644; 4. Wills, 40 Cyc., p. 1074; 5. Wills, 40 Cyc., p. 997; 6. Wills, 40 Cyc., p. 997; 7. Constitutional Law, 12 C. J., 387.

## FROM WASHINGTON.

Appeal from the Circuit Court of Washington County. —HON. D. A. VINES, Judge.

CARTER & McKINNEY, for plaintiff in error.

COX & TAYLOR and J. H. EPP, JR., for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding to probate a will hereafter set out, brought by the prime beneficiary thereof against certain heirs and representatives of the testator. One of the testator's nephews opposed the probate of the socalled will. He answered the petition filed in the County Court denying the validity of the will and prayed that his answer be treated as a petition for contest and that the cause be transferred to the Circuit Court to be there tried upon an issue of *devisavit vel non.* None of the

other defendants answered and a *pro confesso* was taken against them.

The matter was certified to the Circuit Court and tried there upon an agreed statement of facts before the Circuit Judge sitting without a jury. The Circuit Court sustained the will and a judgment was entered accordingly.

The stipulation of facts shows that A. J. Epperson and Susan E. Epperson, were man and wife, having lived together for about twenty-five years, on a farm in Washington County. This farm consisted of several tracts of land, some of the tracts being owned by the husband separately and some of the tracts being owned by the wife separately. The wife also had certain personalty of her own, of trifling value.

This couple had no children born of their union, although the husband had several children born of a former marriage. One son by a former marriage, Terry E. Epperson, is the chief beneficiary of the will in controversy.

A. J. Epperson and his wife, Susan E. Epperson, appear to have been in comfortable circumstances and all the while able to take care of themselves. She was sick about a week before her death. Her husband survives and is able to look out for himself and for his business. The will is as follows:

"In the name of God amen:

"We, A. J. Epperson and wife Susan E. Epperson Dist. No. 10, Washington County, State of Tennessee, being of sound mind and memory, do make and publish this our last will and testament, jointly in regard to all our real estate and personal property that we shall die seized and possessed of. Our will is that when either one or both of us shall become unable to take care of ourselves

because of old age or sickness or from a disability of any kind whatever, that our son Terry E. Epperson shall take proper care of us by supplying all our needs with the necessaries of life, such as a home, both food and raiment, nursing in affliction and c. and, also to take charge of all our landed possessions, lying and being Dist. No. 10, Washington County, State of Tennessee, and upon which we now reside, and being upon the waters of the Knob Creek and running north and crossing the old Jonesboro and Abingdon road and continuing some distance further north and is part of the Joseph Bowman senior tract of land and he, Terry E. Epperson shall so manage and control the above mentioned lands to the advantage of all parties concerned.

"And our will is that all our just debts shall be paid by him, and in death he shall assume the payment of doctor bills, and burial expenses and consign us to our graves with the usual formalities, and furthermore our will is, that Terry E. Epperson shall within the time of two years after the death of both us pay to his sister Bessie Ford the sum of Five Hundred Dollars, her part of our estate. And also to pay to Sanford C. Epperson and John Byron Epperson his two brothers the sums of Five Hundred Dollars each, this shall be their part of our estate. And also to pay to James Logan Epperson his brother the sum of Four Hundred and Forty Dollars, he having previously received Sixty Dollars, this shall be his part of our estate.

"Finally, for, and in consideration of the faithful compliance with the provisions and conditions of this our last will and testament, we, A. J. Epperson and wife Susan E. Epperson do give and bequeath to our son Terry E. Epperson all our real estate consisting of several tracts of land as above described with all appurte-

nances belonging thereto, and also all the personal property such as household goods, and live stock, farm implements, cash on hands, notes and bonds and any other property of value that we shall die seized and possessed of, to have and to hold unto our son Terry E. Epperson, his heirs and assigns, forever.

"In testimony whereof we, A. J. Epperson and Susan E. Epperson have to this our last will and testament subscribed our names and affixed our seals. This the 7th day of Jan. in the year of lord 1927.

"A. J. EPPERSON,<br>
"SUSAN E. EPPERSON.

"Witnessed by

"E. A. Thomas,

"Beverly Thomas."

So far as we are advised this is the first case involving an effort to probate a joint will that has reached this Court, although such cases have often arisen in other jurisdictions. This is not a mutual will and it is not a joint will by persons jointly interested in the property and undertaking to jointly dispose thereof by will. This is a will in which two persons have undertaken to join in disposing of property held separately by each of them. What we will have to say herein, therefore, is limited strictly to the case of a joint will by which persons attempt to dispose of property separately owned by them, and we expressly disclaim any intention of a general discussion of mutual, reciprocal and joint wills. Our consideration is further narrowed by the peculiar nature of this joint will which an examination thereof discloses.

(1) The earlier English cases pronounced against the validity of joint wills as did the earlier American cases. The more modern decisions, however, of the Courts of both countries uphold such wills and declare

that they are not contrary to public policy. 28 R. C. L., 167, 40 Cyc., 2110, *et seq.*, Schouler on Wills (5 Ed.), Sec. 456, *et seq.*, Page on Wills, Sec. 65, *et seq.*

Some of the earlier cases holding joint wills invalid are *Darlington* v. *Pulteny*, 1 Cowp., 260.; *Hobson* v. *Blackburn*, 1 Add., 277; *Clayton* v. *Liverman*, 2 Dev. & B. (N. C.), 588; *Walker* v. *Walker*, 14 Ohio St., 175, 82 Am. Dec., 474.

Later cases sustaining the validity of such wills are *Schumaker* v. *Schmidt*, 44 Ala., 454, 4 Am. Rep., 135.; *Frazier* v. *Patterson*, 243 Ill., 80; *Gerbrich* v. *Freitag*, 213 Ill., 552, 104 Am. St. Rep., 234, 17 Anno. Cas., 1003; *Lewis* v. *Scofield*, 26 Conn., 452, 86 Am. Dec., 404; *Evans* v. *Smith*, 28 Ga., 98, 73 Am. Dec., 751; *Betts* v. *Harper*, 39 Ohio St., 639, 48 Am. Rep., 477.

(2) In most of the cases where persons have undertaken to make a joint will disposing of property owned by them separately and such wills have been sustained, the instruments were of a nature that each will could be treated as a separate disposition by each testator of his individual property, and, therefore, entitled to probate on the death of each testator as the last will and testament of that testator. That two wills were written on the same piece of paper was thought to be a matter of no consequence. See authorities cited above.

We have, however, a will of different character before us. In this will the parties, owning separate property, deal with such property as joint property and undertake, as we read the will to make a disposition of their property not to be effective until the death of the survivor. Speaking of such a will as we have under consideration, it is said in the Cyclopedia of Law:

"Where a joint will is not a disposition by each testator of his own property separately, but a disposition of

156 Tenn.—11.

joint property, or of separate property treated as a joint fund, after the death of the survivor, the will cannot be admitted to probate so long as either of the testators is living. Nor in such a case can the estate of the testator dying first be held in abeyance until the death of the survivor for the purpose of then probating the instrument as the will of both testators, but the estate of the one so dying first must be distributed as intestate estate." 40 Cyc., 2114.

Mr. Page observes:

"As to wills of the third type—those by which the testators jointly devise their joint interests to third persons, or treat their separate property as a common fund out of which they provide for third persons—there has been more diversity of opinion. The great weight of authority is that the will of this type is to be probated on the death of each testator as the separate will of decedent, and that, as said before, if this cannot be done, the instrument should be refused probate as a will altogether. This last rule seems to rest upon sound policy. The funeral expenses and debts of the decedent should be paid as soon as is practicable, and the estate settled. To delay such payment until the death of some one other than testator—an event which may not occur for years—would make the prompt and orderly settlement of decedent's estate impossible.

"It must, however, be admitted that there are some early cases which recognize the validity of the joint will, in which it is intimated that such will could not be probated until the death of both testators." Page on Wills, Sec. 68.

Mr. Schouler makes this comment:

"Where the transaction we are considering is such that the joint or mutual disposition cannot take the effect

intended until both or all of the testators die, public policy receives a rude shock. The probate courts of England and some of our States, however, stand by the consequences, and pronounce that probate must be delayed in such a case until both or all of the testators die. But delicate and important questions in this connection remain unanswered; as, for instance, how the first decedent's estate shall meantime be settled and disposed of and whether a title can in any sense devolve under his will; and the latest judicial disposition must be to find some way out of the dilemma.'' Schouler on Wills (5 Ed.), Sec. 459.

The editor of the note upon joint mutual, reciprocal and multi-wills, 136 Am. St. Rep., 592, 594, remarks that a joint will conditioned to take effect on the death of all the testators is invalid.

'The foregoing quotations from the text-writers rest chiefly upon *Hershey* v. *Clark*, 35 Ark., 17, 37 Am. St. Rep., 1, and *Bank* v. *Bliss*, 67 Conn., 317. These cases take the position, sound as we think, that there can be no such thing as a joint will of this nature to take effect on the death of the survivor. The cases cited differ from the one before us only in this, that in those cases the effect of the will was postponed in express terms, until the death of the survivor, while in this case the effect of the will is postponed until the death of the survivor by necessary implication. *(3)* That which is clearly implied is as plainly declared as that which is expressed.

It seems impossible to us, during the life of her husband, to undertake the execution of Mrs. Epperson's will as a separate instrument. We do not think she could have had any such effort in contemplation. An attempt to execute the will separately would result in the defeat of her plainly expressed intentions.

*(4)* The first paragraph of the will, as above quoted, undertakes to make a disposition of the property under certain circumstances during the lives of the testators. Such paragraph can, therefore, have no force as a testamentary disposition of property. It merely expresses the conditions upon which the testamentary dispositions following are to rest. This paragraph must be looked to along with the rest of the will to determine the real intentions of the testators. *McDonald* v. *Ledford,* 140 Tenn., 471.

*(5)* It will be observed that the will before us was designed to make no disposition of any property at the death of the first of the testators. The gift to Terry E. Epperson in the third paragraph was ''in consideration of the faithful compliance with the provisions and conditions of this our last will.'' The conditions as stated in the first paragraph were that when either or both of the testators became sick or infirm and unable to take care of themselves, Terry E. Epperson was to assume their care, supply their needs, pay their doctor's bill and funeral expenses. Terry E. Epperson was to take charge of the lands and manage for the best interests of all the parties, in case testators were disabled while they lived. These conditions could not be fully complied with until the last of the testators had died and been buried, and then only did the gift or devise to Terry E. Epperson become complete.

*(6)* The special legacies provided for other children of A. J. Epperson in paragraph two of the will were expressly directed to be paid ''within the time of two years after the death of both of us.'' All these legacies were referred to in paragraph two as the childrens' parts ''of our estate.'' Neither the personal representative of Mrs. Epperson, nor Terry E. Epperson, could do any-

thing toward satisfaction of these legacies, winding up Mrs. Epperson's estate separately. Said legacies were charged against the joint estate, and it could not be determined what part of them was to be paid out of the wife's estate.

*(7)* If this instrument was now admitted to probate as the separate will of Mrs. Epperson, the gifts therein would have to take effect as executory devises. No disposition effective at her death would be made of any of Mrs. Epperson's property. Vestiture is postponed until after the death of her husband. There is no particular estate.

*(8)* In case of an executory devise where a freehold is limited to commerce *in futuro* upon a contingency, until the contingency happens, the fee passes in the usual course of descent to the heirs at law. 4 Kent. Com. 269. If the will went to probate now, as that of Mrs. Epperson, her heirs would be entitled to enter and hold her real estate until the executory devise to Terry E. Epperson took effect. It was certainly not her intention to bring about such results and deprive her husband during his life of the use of part of the farm upon which they had lived.

*(9)* We are accordingly driven to the conclusion that these testators did not intend that this instrument should be probated as the will of either of them until the death of both, and that this intention appears just as clearly as if expressed in as many words. They undoubtedly thought that a will not effective until the death of the last would leave the property undisturbed, at the death of the first, and in the possession of the survivor.

The conclusion of the cases and of the text-writers above cited that a will must take effect at the death of the

testator, or not at all, for the reasons given and others, seems incontrovertible.

(10) The power to dispose of property by the will, or real estate at least, depends entirely upon Statute. It is not a natural or constitutional right and may be limited and regulated by legislation. After the Norman conquest, the power to devise land did not exist in England until the Act of 32 Henry VIII. Under the Feudal system, land generally could not be transferred except by consent of the King or Lord. *Martin* v. *Stovall,* 103 Tenn., 1; *Buchanan* v. *Matlock,* 27 Tenn. (8 Humph.), 390.

The Act of 32 Henry VIII is part of the common law of Tennessee. *Davis* v. *Baugh,* 33 Tenn. (1 Sneed), 477; Pritchard on Wills, Sec. 76. That Statute conferred, with restrictions stated, "full and free liberty, power and authority to give, dispose, will and devise, as well by his last will and testament in writing, or otherwise by any act or acts lawfully executed in his life, all his said manors, lands, tenements or hereditaments, or any of them, at his free will and pleasure."

(11) The power given was to dispose of land "by his last will and testament in writing." What a will meant was well understood at the time of the Statute. Wills seem to have been common in England during Saxon times and were known and permitted in certain cases during Feudal times. So far as we are aware, a will has always been treated as an instrument efficient at the death of the testator. When the Statute, therefore, conferred the right to dispose of property by will, it conferred the right to dispose of property by an instrument taking effect at testator's death. The Statute did not confer power to dispose of property by an instrument to remain suspended and in abeyance for an indefinite period

of time after a testator's death. Such an instrument was something unknown, is still unknown, and is not a will.

(12) It results, upon the whole case, in our opinion Mrs. Epperson did not intend that the paper writing before us should be probated as her will prior to the death of her husband. To allow earlier probate would bring about a state of affairs that she never anticipated nor desired. She undertook to appoint her property, as it has turned out, by an instrument contrived to have delayed operation and effect—such an instrument as the law has not authorized. If her wishes are defeated, this is so because she has attempted to dispose of her property through a medium not sanctioned by Statute. This Court cannot legislate and promulgate a new agency for the distribution of a decedent's estate.

For the reasons stated, the judgment below must be reversed and the petition to probate the paper writing as the will of Mrs. Epperson dismissed.