# HUFFINES v. MINCHEY.
## MINCHEY v. HUFFINES.—240 S. W. (2d) 259.

Middle Section.   March 2, 1951.

Petition for Certiorari denied by Supreme Court, May 12, 1951.

W. H. Turner and H. B. McGinness, both of Carthage, for plaintiff in error.

H. H. Clark, of Cookeville, P. J. Anderson and W. C. Anderson, both of Gainesboro, for defendant in error.

HOWELL, J. This is a contest as to the validity of what purports to be a joint will of B. H. Minchey and his wife Mrs. Thelma Minchey dated March 28, 1949, the grounds of the contest being that the document is not of such form, character and nature as to constitute a valid will and testament.

After the usual preliminary proceedings in the County Court of Jackson County, Tennessee, in such cases, the question of the validity of the will was heard in the Circuit Court of Jackson County upon the issue of devisavit vel non by the Honorable John D. Holladay, Judge, sitting without a jury, who held that the instru-

ment in writing presented was not the last will and testament of B. H. Minchey as it was not in such form as to constitute a valid will. At the same time another will of B. H. Minchey dated July 31, 1944, was presented and offered for probate and the two matters were consolidated and heard together. The Circuit Judge sustained the writing of July 31, 1944, as a valid will of B. H. Minchey. No attack was made upon the will of July 31, 1944, except that it had been revoked by the alleged will of March 28, 1949.

By proper procedure the case was appealed to this Court by the Executor named in the alleged joint will and assignments of error have been filed. The assignments of error are as follows:

"1. The Court erred in adjudging the paper writing bearing date March 28, 1949 offered for probate by the plaintiff executor, Kenneth Huffines, as the last will and testament of B. H. Minchey, deceased, to be invalid as a will because the evidence preponderates against such judgment of the Court.

"2. The Court erred in adjudging the paper writing bearing date March 28, 1949, signed by B. H. Minchey and Thelma Minchey, offered for probate by the said Kenneth Huffines, executor, as the last will and testament of B. H. Minchey, not to be the last will and testament of the said B. H. Minchey, for the reason that, considered in its entirety, though a joint will in form, it is of such a nature that it can be treated as a separate disposition by the said B. H. Minchey of his individual property, and thus entitled to probate as his last will and testament.

"3. The Court erred in construing said paper writing as not taking effect upon the death of the said B. H. Minchey, and as thus invalid as his will, for the reason,

that, its whole scope and tenor considered, the dispositions of his property made therein by the said B. H. Minchey were intended to be and were effective as of the date of his death, such dispositions being as follows:

"To his wife, Thelma Minchey, and estate for life or widowhood, by implication, in all his property, subject to his debts;

"To Kenneth Huffines a life estate, subject to that of Thelma Minchey, in testator's entire interest and estate in the tract of land described in the will, with remainder in fee to James Richard Huffines;

"All the remainder of his property, subject to an estate for life or widowhood of Thelma Minchey therein, one-half to the persons who shall constitute his heirs at law at the time of the death or remarriage of testator's widow, Thelma Minchey, and one-half to the persons who shall constitute her heirs at law."

The will in question is as follows:

"Realizing that life is uncertain and that death is sure we B. H. Minchey and Thelma Minchey do hereby make and publish this our last will and testament hereby revoking any and all other wills heretofore made by us it is the will of each of us that our burial expenses of each of us is to be paid out of the first money that comes in to the hands of our executor and that a nice monument be erected to the grave of each of us and that all of the just debts of either or each of us is to be paid consisting of expenses of Hospital bills doctors bills and expense of careing for us in our own sickness at any and all times before our deaths we will and bequeath to Kenneth Huffines during his lifetime and at his death to his son James Richard Huffines the following tract or parcel of land beginning in the branch at F. S. Huffines line thence running Westward course to Harmon Jenkins

line thence a rathernorth course up the branch to Gordon Porterfields line Thence a North East course with Gordon Porterfield line to the top of the hill to Fount Huffines line, Thence out the ridge and down the hill with said Huffines line to the beginning then after the death of each of us all the rest of our property to be divided equally between both of our heirs this will is not to take effect until the death of each of us. If my wife Thelma Minchey should marry after her husbands death she is to only have what the exemptions is allowed to her by law having the utmost confidence in our nephew Kenneth Huffines we hereby nominate and appoint him as our Executor to execute this our last will he to take oath and execute bond to faithfully execute this our last will

"This March, 28, 1949."

The following stipulation of facts, signed by counsel, was filed:

"In this case it is stipulated and agreed by the parties as follows:

"At the time of the execution by B. H. Minchey and Mrs. Thelma Minchey of their Will, bearing date March 28, 1949, witnessed by J. L. McCarver and Mrs. Sadie McCarver, the said B. H. Minchey and Mrs. Thelma Minchey were the owners of their separate properties, as follows:

"The personal property of B. H. Minchey included about Five Thousand Dollars, ($5,000.00), on deposit in Citizens Bank & Trust Company, at Carthage, Tennessee; seven head of cattle, and other miscellaneous personalty of small value,

"The real estate of the said B. H. Minchey, according to the record title, consisted of a farm of 40 acres, more or less, situated in the third civil district of Jackson

County, Tennessee, six-tenths undivided interest in another tract of land in the same district of said county, consisting of 70 acres, more or less, a portion of which is set forth and described in the said above mentioned will, and the other four-tenths undivided interest in the last mentioned farm being owned by, according to the record title, by B. H. Minchey and his wife, Thelma Minchey, as tenants by the entireties.

"B. H. Minchey was 58 years of age and Thelma Minchey was 46 years of age, and they had no children.

"The said Mrs. Thelma Minchey was the individual owner of certain personal property, including about five hundred dollars ($500.00) deposited in bank, household and kitchen furniture of the value of about five hundred dollars ($500.00), and two heiffers.

"Also, as above stated, she and her husband, the said B. H. Minchey, were the owners as tenants by the entireties, according to the record, of four-tenths undivided interest in the last above mentioned farm consisting altogether of 70 acres, more or less.

"Nothing in this stipulation of facts shall operate to prejudice the right of the said Mrs. Thelma Minchey to claim or assert her individual title or ownership of any of the foregoing lands by way of resulting trust or otherwise."

As is shown by the stipulation of facts B. H. Minchey and his wife Mrs. Thelma Minchey were the owners of separate properties at the time of the execution of the purported joint will.

■ Much has been written upon the subject of joint wills. (See Vanderbilt Law Review Vol. 4, No. 1 December 1950). It is well settled, however, that the validity of every will must be determined by the terms of the will itself. Rarely are two wills found using the

same language and the expressed intention of the testator must prevail.

In Pritchard on the Law of Wills, paragraph 21 on page 21 is as follows: "A mutual will, by which two or more persons devise reciprocally to each other, is valid, and operates as the separate will of whichsoever dies first. But it is held that a joint will made by two persons, treating the separate property of each as a joint fund, and disposing of it to a third person, cannot be admitted to probate, either as the joint will of the parties or as the separate will of either. Such a will, it is said, partakes of the nature of a compact, in which each provision is influenced by all the rest; is in its nature irrevocable, unknown to the testamentary law and inconsistent with its policy."

In the case of Epperson v. White, 156 Tenn. 155, 299 S. W. 812, 813, 57 A. L. R. 601, the Supreme Court in passing upon the validity of a joint will of A. J. Epperson and his wife Susan E. Epperson said:

"In most of the cases where persons have undertaken to make a joint will disposing of property owned by them separately and such wills have been sustained, the instruments were of a nature that each will could be treated as a separate disposition by each testator of his individual property, and therefore entitled to probate on the death of each testator as the last will and testament of that testator. That two wills were written on the same piece of paper was thought to be a matter of no consequence. . . .

"We have, however, a will of different character before us. In this will the parties, owning separate property, deal with such property as joint property, and undertake, as we read the will, to make a disposition of their property not to be effective until the death of the

survivor.  Speaking of such a will as we have under consideration, it is said in the Cyclopedia of Law:

" 'Where a joint will is not a disposition by each testator of his own property separately, but a disposition of joint property, or of separate property treated as a joint fund, after the death of the survivor, the will cannot be admitted to probate so long as either of the testators is living.  Nor in such a case can the estate of the testator dying first be held in abeyance until the death of the survivor for the purpose of then probating the instrument as the will of both testators, but the estate of the one so dying first must be distributed as intestate estate.'  40 Cyc., 2114."

. . . . . .

"We are accordingly driven to the conclusion that these testators did not intend that this instrument should be probated as the will of either of them until the death of both, and that this intention appears just as clearly as if expressed in as many words.  They undoubtedly thought that a will not effective until the death of the last would leave the property undisturbed at the death of the first, and in the possession of the survivor."

. . . . . .

"It results, upon the whole case, in our opinion Mrs. Epperson did not intend that the paper writing before us should be probated as her will prior to the death of her husband.  To allow earlier probate would bring about a state of affairs that she never anticipated nor desired. She undertook to appoint her property, as it has turned out, by an instrument contrived to have delayed operation and effect—such an instrument as the law has not authorized.  If her wishes are defeated, this is so because she has attempted to dispose of her property

through a medium not sanctioned by statute. This court cannot legislate and promulgate a new agency for the distribution of a decedent's estate.''

In the more recent case of Richmond v. Richmond, 189 Tenn. 625, 227 S. W. (2d) 4, at page 6, our Supreme Court has discussed the question of the validity of joint wills and said in part:

''Our Tennessee cases have made it plain that the term, as employed in this state, means no more than a plurality of wills appearing in the same instrument. Of course it must not appear on the face of the paper that to give it effect as the sole will of any testator would be contrary to his intention, or that it is impossible to ascertain how he would have it operate as his sole will.

''The litigants in this case are apparently in accord on this primary principle. They seem to be further in agreement upon the important rule made plain in the case of Epperson v. White, supra, that no will, joint or single, can be allowed to postpone the vestiture of titles to a date subsequent to the death of the testator or to provide for such vestiture prior thereto.

''What is earnestly debated is whether the will in the present instance can be treated as two individual wills, independently operative, or whether it must be said that under the terms of the document, treated as two wills, neither was subject to full execution prior to the effective date of the other.

''If the testators meant to treat their several estates separately and nothing appears to prevent the execution of the paper writing as the single will of either of the testators upon his or her death, there can be no objection to sustaining the validity of the joint instrument. Popejoy v. Peters, supra. [173 Tenn. 484, 121 S. W. (2d) 538] If, on the other hand, it is apparent that the tes-

tators meant to treat their estates as a joint possession to be disposed of and vest in their beneficiaries only when both wills become operative, so that the administration of one estate would have to abide the settlement of the other, there would be no way, even through the hypothesis of an intervening trust, to bring the directions of the testators within the limits beyond which wills are not permitted to be made.''

.  .  .  .  .  .

''We have concerned ourselves with the suggestion made by Mr. Page, that to save joint wills which postpone the operation of the instrument 'the intention of the party . . . to make the gifts therein set forth should be regarded as his primary intent, and his intention to postpone the operation of the instrument until the death of the survivor should be regarded as a subsidiary intent which should be ignored as contrary to and inconsistent with the paramount intent.' Page on Wills, Sec. 108, but find that such reasoning leads us into outright conflict with established authority. Epperson v. White, supra. Also, like the construction which would accept the hypothesis of a trust to accomplish vestiture of title, this response would still beg the vital and determinative question of whether a court, in the present case, can order the will executed in a manner permissible under the law without thereby substituting for the expressed will of the testators, a wholly different plan and purpose.''

In applying these rules to the will before us we think that the clearly expressed intention of the testators was that the will was not to be probated until after the death of the last survivor, and that therefore they

undertook to dispose of their property in a manner not authorized by law.

These testators owned separate property real and personal and the will could not be carried out until the death of the survivor. As expressing the intention of the testators the will in the first few lines is referred to as "our last will," it then directs that "our burial expenses of each of us is to be paid", and that "a nice monument be erected to the grave of each of us," and then that "all of the just debts of either or each of us is to be paid consisting of expenses of Hospital bills, doctors bills and expenses of careing for us in our own sickness at any and all times before our deaths", and again "after the death of each of us all the rest of our property to be divided equally between both of our heirs this will is not to take effect until the death of each of us."

It thus appears that the terms of this purported will could not be carried out until after the deaths of both B. H. Minchey and Mrs. Thelma Minchey and that it is impossible to ascertain how to administer the estate after B. H. Minchey's death and while his widow Mrs. Thelma Minchey is still alive.

We are therefore of the opinion that B. H. Minchey and his wife Thelma Minchey intended to make a joint disposition of their separate properties and the disposition thus made by the will in question is not sanctioned by law.

The assignments of error are overruled and the judgment of the Circuit Court that the will of March 28, 1949 signed by B. H. Minchey and his wife Thelma Minchey is not a valid will and testament of B. H. Minchey and that the will dated July 31, 1944 offered for probate by Mrs. Thelma Minchey does constitute a true whole and

last will of B. H. Minchey and is entitled to probate as such, is affirmed.

The case will be remanded to the Circuit Court of Jackson County for the execution of the order of that Court.

The Executor will pay the costs.

Affirmed and remanded.

Hickerson, J., and Kizer, Sp. J., concur.