# BEACH v. COBBLE et al.—260 S. W. (2d) 212.

Eastern Section. November 19, 1952.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

694

Leon E. Easterly, of Greeneville, for appellant.

John A. Armstrong, of Greeneville, for appellees.

HOWARD, J.   Complainant, W. D. Beach, filed this suit against the defendants, T. C. Cobble, executor of the

estate of G. A. Beach, Gladys Cobble, wife of T. C. Cobble, and Mary E. Beach, surviving widow of G. A. Beach, attacking the validity of a joint or mutual will executed by G. A. Beach and wife, Mary Beach, on April 8, 1941, on the ground that the document does not constitute a valid will.

The bill alleges in substance that G. A. Beach and wife, Mary E. Beach, owned several parcels of real estate individually as well as by the entirety, and that on April 8, 1941, they executed an instrument in the form of a joint will by which each attempted to devise their individual property to Gladys Cobble, a non-relative; that G. A. Beach died on May 7, 1944, and subsequently thereto the will in question was admitted to probate in the County Court of Greene County where the said T. C. Cobble qualified as executor in accordance with the terms of the will, and that the complainant, a brother of G. A. Beach, would be entitled to share in the latter's estate in the event the will should be declared void.

The bill further alleges that the will is invalid because (1) the testators undertake to treat their separate estates as a joint possession to be vested in a third person only upon the death of both testators; (2) that the provisions of the will are so closely related that each provision is influenced by the remaining provisions, rendering the will unenforceable; and (3) that the will as such cannot be treated as the separate will of either maker, or probated as such.

The bill also seeks a construction of the will, which reads as follows:

"We, G. A. Beach and Wife, Mary E. Beach; do make and publish this our joint will and testament and agree that each is bound by the terms and conditions of said will and by this act, and in so doing, we

hereby revoke and make void any and all other wills by either of us at any time heretofore made.

"First: We direct that all of our just debts, including our reasonable funeral and burial expenses be paid by our Executor out of the first money coming into the hands of such Executor. We desire to make it clear that upon the death of either of us, all just debts of that one shall be immediately paid and discharged.

"Second: We further will and direct that upon the death of the first one of us, all of the property which either of us own at the time of the death of that particular person, shall become the property of the survivor, to be held and owned by the survivor and for the use and benefit of such survivor so long as the survivor shall live.

"Third: We further will, devise, and bequeath to our foster daughter, Gladys Cobble, whom we have never legally adopted, she being the wife of T. C. Cobble, her heirs and assigns, all of the personal property of every kind or character which we or either of us own at the time of the death of the last survivor, including all household furniture, money on hands, stock, farming tools, Bank Stock, notes, and any and all other accounts receivable of every kind or character.

"Fourth: We further will, devise, and bequeath to our foster daughter, Gladys Cobble, above mentioned, the real estate known as the G. A. French farm, located in the 19th Civil District of Greene County, Tennessee on the water of 'Little Chuckey', said farm containing 150 acres more or less. We also will, devise, and bequeath to the said Gladys Cobble, our home property, located in Midway, Tennessee in

the 19th Civil District of Greene County, Tennessee where we now make our home and containing 10 acres more or less.

Fifth: We further will, devise, and bequeath to the said Gladys Cobble, our farm containing 68 acres more or less and known as the Beach farm, located in the 19th Civil District of Greene County, Tennessee and near 'Little Chuckey.'

Sixth: We hereby nominate and appoint T. C. Cobble, as Executor of this our last will and testament and we hereby specifically excuse him from executing bond. * * *''

Upon the hearing the Chancellor held that the will was valid, that it could be treated and probated as the separate will of each maker, and construed its provisions adversely to the complainant's claims.

The complainant has perfected an appeal to this court and has assigned errors, the chief complaints being that the Chancellor erred in holding (1) that the will was valid, (2) that the paper writing constituted separate wills and could be probated as such, (3) that none of the provisions of the will were influenced by the remaining provisions, and (4) that the real estate devised by the testator vested immediately upon his death and was not postponed until the death of both testators.

The record discloses that the title to the lands referred to in the will was in the name of G. A. Beach individually, and the record is silent as to the amount of personalty owned by him at the time of his death. Neither does the record show what property is owned by the surviving widow, nor the amount held by them as tenants by the entirety.

The law recognizing joint wills in this state is well settled. Richmond v. Richmond, 189 Tenn. 625,

227 S. W. (2d) 4; Popejoy v. Peters, 173 Tenn. 484, 121 S. W. (2d) 538; Seat v. Seat, 172 Tenn. 618, 113 S. W. (2d) 751; Epperson v. White, 156 Tenn. 155, 299 S. W. 812, 57 A. L. R. 601; Sizer's Pritchard Law of Wills and Executors, Sec. 21, p. 21.

In Sizer's Pritchard Law of Wills and Executors, supra, it says:

"A mutual will, by which two or more persons devise reciprocally to each other, is valid, and operates as the separate will of whichsoever dies first. But it is held that a joint will made by two persons, treating the separate property of each as a joint fund, and disposing of it to a third person, cannot be admitted to probate, either as the joint will of the parties or as the separate will of either. Such a will it is said, partakes of the nature of a compact, in which each provision is influenced by all the rest; is in its nature irrevocable, unknown to the testamentary law and inconsistent with its policy."

In Epperson v. White, supra [156 Tenn. 155, 299 S. W. 813], the Supreme Court said:

"In most of the cases where persons have undertaken to make a joint will disposing of property owned by them separately and such wills have been sustained, the instruments were of a nature that each will could be treated as a separate disposition by each testator of his individual property, and therefore entitled to probate on the death of each testator as the last will and testament of that testator. That two wills were written on the same piece of paper was thought to be a matter of no consequence."

In the comparatively recent case of Richmond v. Richmond, supra [189 Tenn. 625, 227 S. W. (2d) 6], our Su-

preme Court discussed the question of joint wills and said in part:

"Our Tennessee cases have made it plain that the term, as employed in this state, means no more than a plurality of wills appearing in the same instrument. Of course it must not appear on the face of the paper that to give it effect as the sole will of any testator would be contrary to his intention, or that it is impossible to ascertain how he would have it operate as his sole will.

       *          *          *          *          *

"What is earnestly debated is whether the will in the present instance can be treated as two individual wills, independently operative, or whether it must be said that under the terms of the document, treated as two wills, neither was subject to full execution prior to the effective date of the other.

"If the testators meant to treat their several estates separately and nothing appears to prevent the execution of the paper writing, as the single will of either of the testators upon his or her death, there can be no objection to sustaining the validity of the joint instrument. Popejoy v. Peters, supra [173 Tenn. 484, 121 S. W. (2d) 538]. If, on the other hand, it is apparent that the testators meant to treat their estates as a joint possession to be disposed of and vest in their beneficiaries only when both wills become operative, so that the administration of one estate would have to abide the settlement of the other, there would be no way, even through the hypothesis of an intervening trust, to bring the directions of the testators within the limits beyond which wills are not permitted to be made."

In Popejoy v. Peters, supra [173 Tenn. 484, 121 S. W. (2d) 539], G. V. Donehew and wife Emly Donehew, executed a joint will leaving all their property to Edd Peters and wife Phoebe Peters. Donehew and his wife owned real property as tenants by the entirety and he owned personal property individually. Donehew died in 1936 and his wife died in 1937. Complainants, the collateral heirs of Mrs. Donehew, attacked the will alleging that she died intestate and claimed the property as her heirs. In passing on the question the Supreme Court, speaking through Chief Justice Green, said:

"We see no reason why this will could not have been probated as a separate disposition of the property of G. V. Donehew at his death and again probated as a separate disposition of the property of Emly Donehew at her death. It was noted in Epperson v. White, 156 Tenn., 155, 299 S. W. 812, 57 A. L. R., 601, that the circumstance that two wills were written on the same piece of paper was not a matter of any consequence.

"In Epperson v. White, by the terms of the joint will held invalid, the disposition of the property of testators was postponed until after the death of the survivor. The conditions upon which the testamentary disposition rested could not be fulfilled until after the death of the survivor. Following authorities reviewed, we expressed the opinion that the estate of the testator dying first could not be held in abeyance until the death of the survivor for the purpose of then probating the instrument as the will of both the testators and that accordingly such a will was bad. It was recognized by the court, however, that if a joint will was of such a nature that it could be treated as a separate disposition by each testator of his indi-

vidual property, it was entitled to probate on the death of each testator as the last will and testament of that testator.

"We think this will meets the test last stated. Insofar as the instrument undertakes to dispose of the estate by the entirety, it could have no effect anyhow on the death of the first testator. In this particular, it could only be effective as the will of the survivor. We see no reason why this instrument could not have been probated as the separate will of G. V. Donehew upon his death and again as the separate will of Emly Donehew upon her death. Probated as the separate will of G. V. Donehew upon his death, it would have been just as effective to pass his personal property, not subject to his debts, as though written on a separate sheet of paper. The record, moreover, does not show that G. V. Donehew owed any debts at the time of his death.

"Mrs. Donehew attempted no disposition of her property other than that contained in the joint will. In Seat v. Seat, 172 Tenn. 618, 113 S. W. (2d) 751, the validity of a joint will such as the one before us was apparently conceded."

██ In applying the foregoing rules to the will in the instant case, we think as did the Chancellor that the will is valid and entitled to probate as the separate will of the decedent, and that by its provisions the decedent made a separate disposition of his individual property. It is apparent that this was the intention of the makers of the will as indicated by Item 2 which provides "that upon the death of the first one of us, all of the property which either of us own at the time of the death of that particular person, shall become the property of the survivor, to be

held and owned by the survivor and for the use and bene-
fit of such survivor so long as the survivor shall live."
Thus by the terms of the will the wife, upon the death of
her husband, took only a life estate in all the property
owned individually by him.

Item 3 bequeaths "to our foster daughter, Gladys
Cobble, whom we have never legally adopted, she being
the wife of T. C. Cobble, her heirs and assigns, all of
the personal property of every kind or character which
we or either of us own at the time of the death of the
last survivor, including all household furniture, money
on hands, stock, farming tools, Bank Stock, notes, and
any and all other accounts receivable of every kind or
character." By this item the foster daughter, upon the
death of the "survivor", not only takes the unused por-
tion of the decedent's personal property, but she also
takes the personal property of the "survivor" as well.

By items 4 and 5 of the will the decedent devised to
his foster daughter, Gladys Cobble, the three parcels or
tracts of land described therein, subject, however, to the
life estate of the "survivor", as provided by item 2.
There was no postponement of vestiture of title to any
of these lands, as insisted, but title thereto became vested
in the devisee immediately upon the death of the decedent.
This we think was the intention of the testator, as noth-
ing appears in the will to the contrary. See Johnson v.
Painter, 189 Tenn. 307, 225 S. W. (2d) 72; Scruggs v.
Mayberry, 135 Tenn. 586, 188 S. W. 207; Code Secs. 7597,
8091, 8133.

Much has been written upon the subject of joint wills,
and the validity of each will must be determined by the
terms of the will itself.

After carefully reading the record and reviewing the authorities, we have concluded that the appellant's assignments are without merit and the decree is therefore affirmed at appellant's costs.

McAmis and Hale, JJ., concur.