# SUDIE DENTON FARRIS et al., Plaintiffs in Error, v. GLADYS DENTON et al., Defendants in Error.
## —390 S.W.(2d) 465.

Eastern Section. December 18, 1964.

Certiorari Denied by Supreme Court April 19, 1965.

Curtin, Haynes & Winston, Bristol, for plaintiffs in error.

Stacy J. Grayson, Bristol, and Wilson, Worley & Granble, Kingsport, for defendants in error.

McAMIS, P. J. This is a will case, tried in the Law Court at Bristol on the issue of devisavit vel non. All grounds of contest have now been abandoned except contestant's claim that the instrument offered for probate as the will of Henry Denton is invalid because it is a joint will of Henry Denton and wife Bertie Denton which postpones vestiture of title until the death of the survivor.

It is the insistence of contestants that, under Richmond v. Richmond, 195 Tenn. 704, 227 S.W.(2d) 4, and McDaniel v. Owens, 39 Tenn.App. 73, 281 S.W.(2d) 259, hereinafter discussed, postponement of vestiture of title makes the instrument void as to Henry Denton, the survivor, notwithstanding Bertie Denton predeceased her husband and the instrument was never offered for probate as her will. Proponents, on the other hand, insist that, since the only property owned by Henry Denton at the time of his death was a farm acquired by himself and wife as tenants by the entirety, even if the will be construed as an attempt to postpone vestiture, such

attempt can be disregarded and the execution of the will by the wife considered surplusage.

The facts are not in dispute. The primary beneficiaries are three daughters of Henry and Bertie Denton. The will shows a well considered intention to favor them over other children because they had contributed greatly to the comfort and support of the parents and had remained at home looking after the home and farm over a period of many years.

The purported will was drafted by a lawyer and executed by Mr. and Mrs. Denton July 17, 1957. Under its terms all of their property goes to the three daughters except nominal sums to be paid by the three daughters to each of the other children and to certain grandchildren, *"said sums to be paid within twelve months after our death, the survivor"*. The will first provides for payment of debts "as soon after our death, *which means the survivor,* as practicable, out of any moneys that we or either of us may die seized and possessed of or may first come into the hands of our executor." The language which we have underscored does not appear in the devise to the three proponents. The only language from which a postponement of vestiture until the death of the survivor could be inferred is that above quoted relating to sums to be paid by the three primary beneficiaries and to debts.

At the time of the death of Bertie Denton, April 13, 1958, she and her husband owned as tenants by the entirety a farm containing 100 acres, valued at $25,000.00. The only other property owned by either, so far as the record shows, consisted of a few household articles owned by Bertie Denton. Upon her death the farm passed to Henry Denton by operation of law as surviving tenant.

The record does not reveal what became of the items of personal property owned by Mrs. Denton but the title to such articles as she owned is not here in question. The writing was never offered for probate as her will.

Henry Denton died February 14, 1963, resulting in this contest of his purported will when it was offered for probate by the three favored daughters.

In Richmond v. Richmond, supra, the contest was initiated by a son to avoid the joint will of Mr. and Mrs. Richmond who had owned four tracts of land, one of which was owned individually by Mrs. Richmond, two individually by Mr. Richmond and one by the entireties. Each had separate bank accounts in substantial amounts at the date of their respective deaths. The will is set out in its entirety in the opinion and, as the opinion states, unmistakably revealed an intent to hold the vesting of title in abeyance until the death of the survivor.

That case holds that while there may be a plurality of wills in a single instrument, such a will becomes ineffective and void when it appears that to give it effect as the sole will of any testator would be contrary to his intention or it is impossible to ascertain how he would have it operate as his sole will. Citing Epperson v. White, 156 Tenn. 155, 299 S.W. 812, 57 A.L.R. 601, the opinion reiterates the rule that no will, joint or single, can be allowed to postpone the vestiture of titles to a date subsequent to the death of the testator or to provide for such vestiture prior thereto. The opinion clearly states, however:

"If the testators meant to treat their several estates separately and nothing appears to prevent the execution of the paper writing as the single will of either of the

testators upon his or her death, there can be no objection to sustaining the validity of the joint instrument. * * * If, on the other hand, it is apparent that the testators meant to treat their estates as a joint possession to be disposed of and vest in their beneficiaries only when both wills became operative, so that the administration of one estate would have to abide the settlement of the other, there would be no way, even through the hypothesis of an intervening trust, to bring the directions of the testators within the limits beyond which wills are not permitted to be made.

"In considering the application of these rules to the case at hand, we think the clearly expressed intention of the testators was to hold in abeyance the estate of the spouse first dying until the death of the other. 'It is our will' that 'our property' be shared equally by our children 'when both of us are dead and buried' and that a monument be erected 'when both of us are laid away.' "

Further on in the opinion the Court noted that advancements to some of the beneficiaries were to be charged against the shares "in the estate of the testators considered as a common fund."

In McDaniel v. Owens; supra, also relied upon by contestants, the writing offered for probate, executed by P. P. Owens and wife, purported to dispose of property "at our death". Some of the property of Mr. and Mrs. Owens was held by the entirety. The writing was refused probation because repeated references to "our property", "our death", "our will" and the like showed affirmatively that the intention of the parties signatory was to postpone vestiture of title until the death of the survivor.

The opinion in the McDaniel case cites Huffines v. Minchey, 34 Tenn.App. 504, 240 S.W.(2d) 259, 260. In

that case the parties owning separate properties and also certain property by the entireties, executed a joint will providing: "(T)his will is not to take effect until the death of each of us." The Court in that case held the purported devise invalid because of the unequivocal provision that it should not take effect until the death of both signatories.

Likewise, in Epperson v. White, 156 Tenn. 155, 299 S.W. 812, 57 A.L.R. 601, the leading case in Tennessee on the subject of joint wills, both husband and wife owned separate properties which they undertook to dispose of by joint will. The Court construed the purported will as attempting to suspend vestiture of title in land owned by the one first dying until the death of the survivor. Holding that, as a matter of public policy, title to property can not be suspended in this way and, further, that under the terms of the will, to do so would manifestly defeat the intention of the wife who had died probation was denied. The case was further complicated by a provision for substantial bequests out of the estate.

These cases stand for the rule that where the joint makers attempt to treat their separate holdings as common property and postpone vestiture of title until the death of the survivor probation will be denied, this upon the grounds that a will must take effect at the date of the testator's death when title to the property devised must vest, that to hold otherwise might defeat the intention of one of the testators in the selection of his beneficiaries or that it is impossible to determine how such testator would have disposed of his estate if he had executed a separate will.

We can not see that any of these reasons for denying probate apply in this case. There is no complication

arising from a provision for advancements or bequests, the latter being for insignificant amounts to be paid by the primary beneficiaries rather than out of the estate. The wife predeceased her husband. Having consulted a lawyer she must have known she could not dispose of the farm by will because it was held by the two makers of the purported will as tenants by the entirety. It is immaterial at this time how she would have disposed of the few items of personal property which she owned. The will offered for probate has nothing to do with her estate. But, if we look to the terms of the writing, to deny probation would plainly defeat not only her intention but also that of her husband.

Why then should the law defeat the intention of the husband who allowed the will to remain unrevoked for a number of years following the death of his wife by denying probation of the instrument as his separate will disposing of property he owned individually at his death? If the will was void as to the wife, her heirs and creditors had their remedy.

"A joint will cannot be sustained as valid, however, if the testators owning separate property, deal with such property as a joint possession and undertake to make a disposition of their property not to be effective until the death of the survivor. Such a will cannot be admitted to probate as long as either of the testators is living. *The estate of the testator first to die will be distributed as an intestate estate.*" Pritchard, Wills and Estates, Phillips, Section 21. (Italics ours) See, to same effect, authority cited in Epperson v. White, supra, p. 162, 299 S.W. 812.

To sustain the writing as the will of the husband would not result in the title to the farm being held in abeyance. It passed under the grant to Henry Denton and not under

the will. Popejoy v. Peters, 173 Tenn. 484, 121 S.W.(2d) 538. So, no question of public policy was presented when it was offered for probate.

An intention to postpone vesting of title to property of the spouse first to die appears by implication, if at all; and to refuse probation would defeat the plainly expressed intention of both makers.

Affirmed with costs to be taxed to plaintiffs in error and sureties and the cause remanded.

Cooper and Parrott, JJ., concur.