ELIZA M. BAKER *v.* JEFFERSON D. BROWN ET AL.

WILLS. *Holograph. Caption.*

   An holographic will, complete and perfect in itself, is not invalidated because the words "My will," a mere caption, were written above it on the same sheet of paper by the hand of another than the testator.

FROM the chancery court of Wilkinson county.
HON. WILLIAM P. S. VENTRESS, Chancellor.
Mrs. Baker, appellant, propounded the will in controversy, in the court below; Brown and others, appellees, contested. The issue *devisavit vel non* was submitted to a jury in the chancery court and a verdict was returned in favor of the contestants. The court below overruled the motion of the proponant for a new trial and rendered a decree adjudging the will void. From this decree the proponant, Mrs. Baker, appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*McWillie & Thompson, Bramlette & Tucker,* and *Thompson & Stricker,* for appellant.

The writing propounded as the will of Mrs. Barkley had, by way of caption, the words "My Will," and the contestants addressed a great part of their efforts to show that these two words were written with a different colored or somewhat paler ink than the rest of the instrument, by a different hand and at a different time.

The chancellor instructed the jury, at the instance of the contestants, that unless they believed from the evidence that "the paper" offered in evidence as the will of Mrs. Barkley was wholly written and signed by her they must find for the defendant, although they might believe that all of the will was written and signed by her except one word.

This instruction was erroneous and misleading, and the result of the trial shows that it was injurious. The evidence was overwhelming that the body of the instrument as well as the signature was in the handwriting of Mrs. Barkley, and it was for that reason that an effort was made to throw suspicion on the caption. The instruction made it requisite that every word on "the paper" should have been written by Mrs. Barkley, and was particularly aimed at the caption "My Will," the authenticity of which could not affect the instrument, complete in itself, since it contained testamentary words and was dated and signed by Mrs. Barkley.

The words "My Will," which constituted the caption of the writing, cannot properly be said to have constituted a part of the will. No caption or indorsement, however worded, will make that a will which is not one without it, as for lack of signature, date or testamentary words, etc., and the converse of the proposition is equally true, for a writing which is in substance a will is in nowise dependent for its effect upon such caption or indorsement. *Roy* v. *Roy,* 16 Gratt. (Va.), 418, 84 Am. Dec., 696; Plumstead's Appeal, 4 So. Rep. (Pa.), 545; *Warwick* v. *Warwick,* 86 Va., 596; Conway's Will, 124 N. Y., 455; Re Booth's Will, 127 N. Y., 109.

It has been held that an holographic will in which two words appeared which were not in the testator's handwriting should be sustained when the presence or absence of the words did not affect the meaning of the instrument. *McMichael* v. *Bankston,* 24 La. Ann., 451.

If the writing in question had not contained words showing that it was to take effect at the death of the subscriber, a resort to the words "My Will" might have been necessary to ascertain the testamentary purpose, but in the body of the writing the subscriber says she wants the proponent, Mrs. Baker, to have all that she owned "at my (her) death," and employs other expressions going to show the testamentary character of the instrument. The will itself, if wholly written and subscribed by

Mrs. Barkley, satisfied the terms of our statute, § 4488, Code 1892. It was complete without the caption, and wholly lacked that uncertainty of character which causes the small boy to attach to his drawing the label, "This is a horse." It could not be anything but her will in view of the terms it employed, and the caption so designating it was wholly superfluous.

This being the case, the jury were certainly misdirected by the instruction mentioned, and the weight of the evidence being decidedly in favor of the genuineness of the instrument they must have been misled by it.

*J. H. Jones* and *A. G. Shannon,* for appellee.

There is involved only a question of fact of which the jury were the sole judges. If there is evidence tending to show that the will was not wholly written and signed by Mrs. Barkley, then the verdict cannot be disturbed, no matter how conflicting the evidence may be. We confidently refer to the evidence of Sidenspinner, Stricker, and Spencer and the comparison of the alleged original will with writings and signatures proved and admitted to be the writings and signatures of Mrs. Barkley as abundant evidence to justify the jury in considering the proposed will a forgery, or at least not wholly written and signed by Mrs. Barkley.

We would respectfully call the attention of the court to the differences between the handwriting of the alleged will and of some of the documents proved to be in Mrs. Barkley's handwriting, or signed by her and introduced by both proponent and contestant.

The words "My Will" are clearly written with different ink and at a different time from the body of the paper, and in a different handwriting. These words seem to have been an afterthought to meet the case of *Young v. Wark,* 76 Miss., 729.

Argued orally by *T. A. McWillie,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

It may be accepted as true from the finding of the jury that the caption of the will consisting of the two words, "My Will," were not written by the testatrix. The instrument probated as the will is in the following words:

"*MY WILL.*"

"STAMPS LANDING, July 26th, 1903.

"I want Eliza Baker to have all I own at my death and carry out my wishes the best she can. Let everything stand as I leave it. Give each heir $5.00 for me.          E. H. BARKLEY."

All of this instrument, except these two words, "My Will," were written by the testatrix, according to the overwhelming weight of the evidence. In other words, the whole paper, except the two words specified, was wholly written, dated, and signed by the testatrix. On this state of the testimony the court gave the following instruction for the defendants:

"The court instructs the jury for the defendants, that unless the jury believes from the evidence that the paper offered here, in evidence, as the will of Mrs. E. H. Barkley, was wholly written and signed by her they must find for the defendants, although the jury may believe from the evidence that all of the will was written and signed by her except *one word,* and in establishing said will the burden of proof is on the plaintiff; consequently if they believe that the evidence is evenly balanced they must find for the defendants." Was this instruction erroneous? Or to put it in clearer light, perhaps, were the two words, "My Will," constituting the caption, pure surplusage? What remained contained the dispositive part of the will, and was in itself an entire, complete, and perfect holographic will. It is doubtless true that the utmost strictness prevails in requiring holographic wills to be wholly written by the testator. Perhaps that view has nowhere been better expressed than by Judge Fenner in Succession of Armant, 43 La. Ann., 314, where the court says:

---

---

"We were at first much impressed with the clear proof made, that the deceased *intended* this paper to be her testament. But there is no more doubt that she *intended* the invalid nuncupative codicil to be her testament. Yet as the latter was attested by women who are incompetent testamentary witnesses, no one claims its validity. And so if the holographic will is not signed as required by law, her intentions cannot save it. The question is not whether she intended this paper to be her will, but whether it is a will clothed with the form of law. An holographic, like every other testament, is a *solemn act.* It matters not how clearly it conveys the last wishes of the decedent, if it is not clothed with the forms prescribed it is null." We cite also as illustrative of this strictness Estate of A. C. Rand, 63 Cal., 468; *Warwick* v. *Warwick,* 86 Va., 602.

This last case, however, aids the view we take in this case, since it held that the words "My Will, Abram Warwick, Jr.," endorsed on the envelope containing the will within, did not constitute a signing of the will so enclosed. In other words, the court held that the inscription on the outside of the envelope was no part of the will within the envelope. It has been held on the other hand, that a holographic will is none the less a holographic will because it may be attested by witnesses. Speaking to the point the court says in Re. Soher, 78 Cal., 479 : "The witness clause is not, under the circumstances, to be considered as a portion of the will which is no more affected by it than any other document which does not require attestation, such as a deed or contract would be. And it seems to us that courts should presume that the intention of the testator was that of a reasonable and prudent man under the circumstances, and should not adopt a somewhat strained construction to defeat what, there is every reason to believe, was the desire of the testator." And to the same effect the supreme court of North Carolina says in *Harrison* v. *Burgess,* Hawks Law and Equity, vol. 1, page 393: "As to the third objection that it is not a will under the act of April, 1784, there can be no weight in it. The

signature of subscribing witnesses is no part of the will. The witnesses put their names there to be enabled to identify the paper, and where the law requires subscribing witnesses it is for the same purpose. Originally the witnesses did not put their names to the paper, but *hiis testibus* was added by the parties concerned, that they might know on whom to call in case of a dispute. The will is not certainly worse by having one subscribing witness, it will certainly answer the purpose of more certainly showing that this is the paper which she saw deposited in the bureau; going beyond the requisitions of the act, in respect of proofs, certainly cannot annul that which comes up to them." See also generally the 29th volume Am. & Eng. Enc. Law (1st ed.), page 127 through page 130, text and notes.

We might rest our decision on the single proposition supported by these authorities, that the words, "My Will," are a mere caption, and constitute no part of the dispositive portion of the will, but we have a much stronger and more direct authority still sustaining our view. The supreme court of Louisiana, in the case of *McMichael* v. *Bankston,* 24 La. Ann., 451, speaking to this point, says as follows:

"The four plaintiffs as witnesses state that the will was entirely written, dated, and signed by the hand of the testator except the word 'to' in the sixth line from the top, and the word 'acres' in the eighth line, which was in a different hand. Another witness and two experts express the same opinion. The original will is before us, and it is evident that there is some difference in the appearance of those two words from the balance of the writing. But it is very manifest that the presence or absence of the two words can have no material effect upon the meaning or contents of the will. Without them the sense is the same as with them, the whole will showing that the testator bequeathed 'to' his wife a certain number of 'acres' of land. In another place there is a connected and rational repetition of this bequest in which the same two words are written by the testator. Admitting, therefore, that the two words in question

were added by the hand of another, we may safely, under the
first clause of Article 1589, R. C. C., consider them as not writ-
ten, and not impair the validity or effect of the will. We cannot
say that the law requires a will to be annulled for so unimpor-
tant and trivial a cause."

Here, manifestly, the words "to" and "acres" were words in
the dispositive part of the will, and they were not written by the
testator, but it is just as manifest that they were so clearly sur-
plusage as to leave the will's meaning without them precisely
what it meant with them, and so the court held that, although
in the dispositive part of the will, the fact that they were not
written by the testator could not defeat the will, unless without
them the meaning and purpose were in some manner materially
affected.

We think this is a perfectly sound view of this matter, and
it follows that the giving of the instruction was fatal error.

*Reversed and remanded.*