JONES *v.* MYERS.

(*Knoxville,* September Term, 1941.)

Opinion filed October 4, 1941.

CALDWELL, BROWN & O'DELL, of Bristol, and C. H. MAS-SENGILL, of Blountville, for plaintiff in error.

CHASE & NEEL, of Johnson City, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The following paper writing was offered for probate as the holographic will of W. M. Jones:

"Oct. 2, 1927

"After our death we want Louise Jones to have what we've got.

"Sallie C. Jones
"W. M. Jones."

This instrument is wholly in the handwriting of W. M. Jones except the signature of his wife, Sallie C. Jones, which is in her handwriting. Because of this signing by the wife the judge of the county court held that the will was not entirely in the handwriting of W. M. Jones and declined to order it probated as his will. Upon appeal, the circuit court and the Court of Appeals concurred in finding that this was a valid holographic will as to W. M. Jones, it having been found after his death among his valuable papers, and in this finding we concur.

The following facts, as set forth in the opinion of the Court of Appeals, are uncontroverted.

"W. M. Jones and wife, Sallie C. Jones, were childless; twenty odd years ago they took into their home as their child a grandniece, Louise Jones, age two years, and they raised this child to womanhood, as a member of their family and as if she were their child. Mrs. Jones died in 1934, and the foster daughter, Louise Jones, thereafter married Robert Myers, and she and her husband continued to live in the home and care for her foster father, W. M. Jones, until his death in 1938. Mrs. Jones left no personal estate of value, but at the time of her death she owned an interest in real estate. The title to the real

property of Mr. and Mrs. Jones is as follows: He owned a portion in fee, and she owned a portion in fee, and another portion, the most valuable, was owned by the two as tenants by the entirety. The values of these respective portions are not shown, and it is assumed that they constituted one boundary. The farm as a whole is not of great value."

Counsel for plaintiff in their brief state that the entire estate of Mr. and Mrs. Jones consists of a 32-acre farm and some household goods, and this statement is not questioned.

In *Epperson* v. *White*, 156 Tenn., 155, 166, 299 S. W., 812, 815, 57 A. L. R., 601, it is said: "The power to dispose of property by the will, or real estate at least, depends entirely upon statute. It is not a natural or constitutional right, and may be limited and regulated by legislation."

Our statute upon the subject, section 8090 of the Code, is as follows: "But a paper writing, appearing to be the will of a deceased person, written by him, having his name subscribed to it, or inserted in some part of it, and found, after his death, among his valuable papers, or lodged in the hands of another for safe-keeping, shall be good and sufficient to give and convey lands, if the handwriting is generally known by his acquaintances, and it is proved by at least three credible witnesses that they verily believe the writing, and every part of it, to be in his hand."

This section is a codification of a North Carolina statute enacted in 1784, and its preamble indicates that it was intended as in the nature of an exception to the preceding section, enacted six months previous. The statute

seems to be peculiar to Tennessee and North Carolina. *Howell* v. *Moore,* 14 Tenn. App., 594.

In *Popejoy* v. *Peters,* 173 Tenn., 484, 121 S. W. (2d), 538, the right to execute such a joint will was sustained.

Even under a strict construction of our statute it seems that the will in question meets every requirement thereof. A case directly in point is that of *In re Cole's Will,* 171 N. C., 74, 87 S. E., 962, 963, the will involved being offered for probate as that of the husband, who was survived by his wife, and is in this language:

"We give and bequeath to the Methodist Orphanage, situated at Raleigh, North Carolina, all our real and personal property after paying all our just debts and giving a decent burial and headstones to our graves.

"This Jan'y 30, 1912.                Duncan Cole.

"Sanford, Lee Co., N. C.                Georgia Cole."

The court, speaking through CHIEF JUSTICE CLARK, said:

"The will in every respect was entitled to probate as the 'holographic will' of Duncan Cole. The signature of his wife thereto was mere surplusage, and could in no wise invalidate the instrument as the will of her husband.

"This was in no wise a 'mutual will,' and the authorities applicable to such wills do not apply. This was a 'joint will,' which has been defined as: 'A testamentary instrument, executed by two or more persons in pursuance of a common intention, for the purpose of disposing of their several interests in property owned by them in common or of their separate property treated as a common fund to a third person, or persons.' " (Citing authorities.)

The opinion contains this further statement: "The fact that his wife signed this will cannot affect its validity

as the will of Duncan Cole. It purports to be the intention of each maker. As the will of Duncan Cole, it fulfills all the statutory requirements. The signature of the wife does not purport to be a part of the will of Duncan Cole, and her signature only purports to be an expression of her testamentary intention, and could be considered only if it were offered to be proved as her will.''

Upon this question the Supreme Court of Louisiana, in *McMichael's Heirs* v. *Bankston*, 24 La. Ann., 451, said:

''The plaintiffs, who are heirs of G. P. McMichael, deceased, sue to annul the olographic will of their father on the ground that it was not wholly written by him.

''The four plaintiffs as witnesses state that the will was entirely written, dated and signed by the hand of the testator, except the word 'to' in the sixth line from the top, and the word 'acres' in the eighth line, which are in a different hand. Another witness and two experts express the same opinion. The original will is before us, and it is evident that there is some difference in the appearance of those two words from the balance of the writing. But it is very manifest that the presence or absence of the two words can have no material effect upon the meaning or contents of the will. Without them the sense is the same as with them—the whole will showing that the testator bequeathed to his a wife a certain number of acres of land. In another place there is a connected and rational repetition of this bequest in which the same two words are written by the testator. . . .

''We cannot say that the law requires a will to be annulled for so unimportant and trivial cause.''

In *Baker* v. *Brown*, 83 Miss., 793, 36 So., 539, 1 Ann. Cas., 371, it was held that a holographic will, entire, complete and perfect as to the dispositive part, is not invali-

dated by the fact that the caption thereof, consisting of the two words "My Will," is in the handwriting of a person other than the testatrix.

For the principle involved we find a very clear statement by the Supreme Court of Utah in *Re Yowell's Estate*, 75 Utah, 312, 331, 333, 285 P., 285, 295, from which we quote the following:

". . . It has been held that a testamentary instrument is valid as an olographic will, although it contains words not in the handwriting of the testator where such words cannot affect the purpose and meaning of the will. [Citing authorities.] . . .

"A strict adherence to the statute which requires that an olographic will must be entirely written, dated, and signed by the testator does not, however, demand that the paper upon which an olographic will is written shall be free from all writing and printing not in the handwriting of the testator. The test is: If the testator intended that any word or figure, not in his handwriting, should be a part of his will, then the instrument is not a valid olographic will, but, on the other hand, if words or figures not in the handwriting of the testator appear on the testamentary instrument which were not intended by the testator to be a part of his will, then the instrument is entitled to be admitted to probate as an olographic will, provided such instrument meets the other statutory requirements."

The rule generally applied is stated very simply by the annotator of Vol. 20, Ann. Cas., 369, as "a testamentary instrument containing words which are not in the handwriting of the testator is invalid as a holographic will, if those words are necessary to render the instrument complete or if they affect its meaning."

Many cases could be cited in support of this rule, but we deem it unnecessary since we have been referred to no decisions taking a contrary view. This principle was given effect by this court in *Douglass & Co.* v. *Harkrender*, 62 Tenn. (3 Baxt.), 114, in which it was held that the fact that testatrix had her will attested by one witness did not destroy its probative value as a holographic will.

Upon that question the Supreme Court of California in *Re Soher*, 78 Cal., 477, 479, 21 P., 8, said: "Here are simply the words, 'Witness: George Penlington, 123 O'Farrell street.' These words do not seem to us to indicate an intention to make an attested will or codicil. It may be that the testator caused them to be placed there for the purpose of supplying proof of his own handwriting, or, in other words, proof that the codicil was olographic. Many testators execute their wills long before death, and they may be persons who are not well known in the community. It may therefore be difficult to prove the handwriting of a document purporting to be a will, found among their papers after death. In view of this, it would be a natural and proper precaution to furnish means of making the required proof. And it seems to us that courts should presume that the intention of the testator was that of a reasonable and prudent man, under the circumstances, and should not adopt a somewhat strained construction to defeat what there is every reason to believe was the desire of the testator. The witness clause is not, under the circumstances, to be considered as a portion of the will, which is no more affected by it than any other document which does not require attestation, such as a deed or contract would be."

We have quoted from authorities in other jurisdictions for the sole purpose of showing the extent to which courts

have gone in sustaining holographic wills. We find it unnecessary in the case under consideration to state the rule as broadly as was done in some of those cases. We simply concur with the other courts in holding that the signature of the wife is no part of the will of the husband, may be disregarded, and the instrument probated as the holographic will of W. M. Jones.

Writ denied.