C. W. McDANIEL, Administrator with the Will Annexed, et al. v. JOHN OWENS.—281 S. W. (2d) 259.

Western Section at Jackson. October 20, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

Joe A. Gordon, of Kenton, and W. R. Landrum, of Trenton, for appellants.

R. P. Adams, H. H. Elder, and Harrell & Nowell, all of Trenton, for appellee.

BEJACH, J.   The question involved in this case is whether or not a paper writing purporting to be the last will and testament of P. P. Owens, bearing date November 21, 1943, is entitled to be admitted to probate in Gibson County, Tennessee.   The paper writing in question is in the words and figures, as follows:
"Nov 21 1943
Hear is Our Will At Our death All in Our name goes to W. M. Owens and Elvis Owens at our Death. All the land of 132 acres in the 11 district of Gibson

County. And all the Bank Shears in Farmers & Merchant Bank. Everything Else goes to them at Our Death for John Owens has got His part of Ething.

Nov. 21 1943

P. P. Owens

and Wife Anna''

This paper writing was admitted to probate in common form in the County Court of Gibson County, Tennessee on January 2, 1952.

The record shows that before the document in question was found, C. W. McDaniel had qualified as administrator of the estate of P. P. Owens, but after the paper writing was admitted to probate, he made his report and settlement, closed the estate, and was by the County Court of Gibson County, appointed administrator with the will annexed on February 1, 1952.

John Owens, the appellee here, as one of the sons of P. P. Owens, filed a petition for contest of the will of his father, P. P. Owens, and the matter was certified to the Circuit Court of Gibson County, Tennessee for a trial in that Court on an issue of devisavit vel non. The cause was tried before the judge and a jury in the Circuit Court of Gibson County, Tennessee, beginning August 13, 1953. The proponents, the appellants in this Court, introduced witnesses to prove that the paper writing was wholly written in the handwriting of the deceased, P. P. Owens, and near the conclusion of the testimony, offered to read to the jury the paper writing purporting to be the last will and testament of P. P. Owens. This was objected to by the contestant, (appellee in this Court), the objection being based on the contention that the paper writing in question is not as a matter of law, entitled to probate. The objection was sustained by the trial judge, and after

the introduction of some additional testimony by the proponents of the will, a motion for peremptory instruction to the jury was made by the contestant, which motion was also sustained. After a motion for a new trial had been made and overruled by the trial judge, an appeal was taken to this Court, and assignments of error have been filed here.

The assignments of error filed in this Court are seven in number, but appellant's brief conceded that these may be properly reduced to two questions presented,—one to the effect that the Court committed error in sustaining defendant's exception to the introduction of the paper writing purporting to be the last will and testament of P. P. Owens, and in refusing to permit the same to be read to the jury, and the other, the alleged error of the Court in directing the jury to return a verdict in favor of the defendant, and taxing the plaintiffs with the costs of the cause. In the opinion of this Court, the two questions to which appellant's brief have reduced the issues in this Court, may be reduced to one,—namely, whether or not the trial Court committed error in sustaining the defendant's exception to the introduction of the paper writing purporting to be the last will and testament of P. P. Owens, and in refusing to permit the reading of same to the jury. This is true because if the paper writing in question was not a valid will under the laws of Tennessee, and not proper to be admitted to probate, it necessarily and automatically followed that the motion for a directed verdict should have been granted.

A considerable amount of testimony was offered by the proponents of the will, most of which was to the effect that the paper writing in question was wholly in the handwriting of the deceased, P. P. Owens. Cross-

examination of some of the witnesses raised a question as to whether or not this was true, and the finger of suspicion was pointed at the circumstances attending the finding and production of the document itself. It is not necessary for this Court, however, to consider the evidence, because the question to be decided by this Court, and one which is determinative of the suit here, is whether or not this Court agrees or disagrees with the ruling of the trial judge to the effect that the paper writing involved in this litigation, is not such a document as under the laws of Tennessee, constitutes a valid will which may be admitted to probate. In any event, the view most favorable to the contentions of appellants, with reference to the evidence, would have to prevail in this Court.

▮ It is insisted on behalf of the appellants that the trial judge erred in treating and considering the paper writing here involved as being the joint will of P. P. Owens and his wife, Anna Owens; and that the appellee's counsel relied entirely on cases which involve joint wills. It is insisted on behalf of appellants that the document here in question was probated in the County Court of Gibson County, Tennessee as the holographic will of P. P. Owens, and in that capacity only, and that it was similarly offered in the will contest in the Circuit Court. Their contention is that the addition of the words, "and wife Anna", after the signature of P. P. Owens, whether written by him or by Mrs. Owens, is immaterial and should be treated as surplusage. To that extent, at least, we can agree with appellant.

The case of Jones v. Myers, 178 Tenn. 24, 154 S. W. (2d) 245, is authority for this position. The will in that case was in some respects similar to the paper writing involved in the instant case. It was short and will be quoted as follows:

" 'Oct. 2, 1927   After our death we want Louise Jones to have what we've got. [Signed,] Sally C. Jones [and] W. M. Jones.' "

This will, except for the signature of Sally C. Jones which was in her handwriting, was written wholly in the handwriting of W. M. Jones, including his own signature to the document. Louise Jones, referred to in this will, was at the time of the litigation, married to one Robert Myers. She had been reared, but not adopted, by W. M. Jones and his wife, Sally C. Jones. Mrs. Sally C. Jones died in 1934 and W. M. Jones died in 1938. It appeared from the undisputed facts in the case, that Mr. Jones owned one tract of land in fee simple, that Mrs. Jones owned another part of their holdings in fee simple, and still another portion, the most valuable, was owned by the two as tenants by the entireties. The will in question, was not offered for probate until after the death of Mr. Jones. The Supreme Court in an opinion written by Mr. Justice McKinney, on authority of Popejoy v. Peters, 173 Tenn. 484, 121 S. W. (2d) 538, distinguished the facts in that case from those of Epperson v. White, 156 Tenn. 155, 166, 299 S. W. 812, 815, 57 A. L. R. 601, in which case, it was held that a joint will which could not be offered for probate separately as to each of the makers thereof, was invalid in Tennessee. After citing Section 8090 of the Code of Tennessee, which deals with holographic wills, and referring to authorities construing same, and authorities from other jurisdictions on the subject of holographic wills, the opinion concludes:

"We have quoted from authorities in other jurisdictions for the sole purpose of showing the extent to which courts have gone in sustaining holographic wills. We find it unnecessary in the case under con-

sideration to state the rule as broadly as was done in some of those cases. We simply concur with the other courts in holding that the signature of the wife is no part of the will of the husband, may be disregarded, and the instrument probated as the holographic will of W. M. Jones.''

The case of Epperson v. White, supra, cited in the case of Jones v. Myers, involved a joint will executed by A. J. Epperson and Susan E. Epperson, his wife. This will was offered for probate after the death of Susan E. Epperson, but prior to the death of A. J. Epperson. The lower courts had sustained the validity of the will as being a valid will of Susan E. Epperson. The holding of the lower court was reversed in an opinion written by Mr. Chief Justice Green. In this opinion, speaking for the Supreme Court, he says [156 Tenn. 155, 299 S. W. 813] :

''This is not a mutual will and it is not a joint will by persons jointly interested in the property and undertaking to jointly dispose thereof by will. This is a will in which two persons have undertaken to join in disposing of property held separately by each of them. What we will have to say herein, therefore, is limited strictly to the case of a joint will by which persons attempt to dispose of property separately owned by them, and we expressly disclaim any intention of a general discussion of mutual, reciprocal, and joint wills.''

This opinion quotes with approval from the Cyclopedia of Law, as follows :

'' 'Where a joint will is not a disposition by each testator of his own property separately, but a disposition of joint property, or a separate property treated as a joint fund, after the death of the sur-

vivor, the will cannot be admitted to probate so long as either of the testators is living. Nor in such a case can the estate of the testator dying first be held in abeyance until the death of the survivor for the purpose of then probating the instrument as the will of both testators, but the estate of the one so dying first must be distributed as intestate estate.' 40 Cyc. 2114.''

The opinion also quotes, with approval, from Page on Wills, Sec. 68, as follows:

'' 'As to wills of the third type—those by which the testators jointly devise their joint interests to third persons, or treat their separate property as a common fund out of which they provide for third persons—there has been more diversity of opinion. The great weight of authority is that the will of this type is to be probated on the death of each testator as the separate will of decedent, and that, as said before, if this cannot be done, the instrument should be refused probate as a will altogether. This last rule seems to rest upon sound policy. The funeral expenses and debts of the decedent should be paid as soon as is practicable, and the estate settled. To delay such payment until the death of some one other than testator—an event which may not occur for years—would make the prompt and orderly settlement of decedent's estate impossible.' ''

Continuing further, the opinion says:

''It seems impossible to us, during the life of her husband, to undertake the execution of Mrs. Epperson's will as a separate instrument. We do not think she could have had any such effort in contemplation.

An attempt to execute the will separately would result in the defeat of her plainly expressed intentions.

\* \* \* \* \* \*

"We are accordingly driven to the conclusion that these testators did not intend that this instrument should be probated as the will of either of them until the death of both, and that this intention appears just as clearly as if expressed in as many words. They undoubtedly thought that a will not effective until the death of the last would leave the property undisturbed at the death of the first, and in the possession of the survivor.

"The conclusion of the cases and of the text-writers above cited that a will must take effect at the death of the testator, or not at all, for the reasons given and others, seems incontrovertible.

"The power to dispose of property by the will, or real estate at least, depends entirely upon statute. It is not a natural or constitutional right, and may be limited and regulated by legislation. After the Norman conquest, the power to devise land did not exist in England until the Act of 32 Henry VIII. Under the feudal system, land generally could not be transferred except by consent of the king or lord. Martin v. Stovall, 103 Tenn. 1, 52 S.W. 296, 48 L.R.A. 130; Buchanan v. Matlock, 27 Tenn. [390] (8 Humph.), 390.

"The Act of 32 Henry VIII is part of the common law of Tennessee. Davis v. Baugh, 33 Tenn. [477] (1 Sneed), 477; Pritchard on Wills, §76. That statute conferred, with restrictions stated, 'full and free liberty, power and authority to give, dispose, will and devise, as well by his last will and testament in

writing, or otherwise by any act or acts lawfully executed in his life, all his said manors, lands, tenements or hereditaments, or any of them, at his free will and pleasure.'

"The power given was to dispose of land 'by his last will and testament in writing.' What a will meant was well understood at the time of the statute. Wills seem to have been common in England during Saxon times and were known and permitted in certain cases during feudal times. So far as we are aware, a will has always been treated as an instrument efficient at the death of the testator. When the statute, therefore, conferred the right to dispose of property by will, it conferred the right to dispose of property by an instrument taking effect at testator's death. The statute did not confer power to dispose of property by an instrument to remain suspended and in abeyance for an indefinite period of time after testator's death. Such an instrument was something unknown, is still unknown, and is not a will." Epperson v. White, 156 Tenn. 155, 163, 166-167, 299 S. W. 812, 814, 57 A. L. R. 601.

In the case of Richmond v. Richmond, 189 Tenn. 625, at page 631, 227 S. W. (2d) 4, 6, in which case, the opinion of the Supreme Court in the case of Epperson v. White, supra, was cited with approval, the Supreme Court speaking through Special Justice, Albert Williams, said:

"Our Tennessee cases have made it plain that the term, as employed in this state, means no more than a plurality of wills appearing in the same instrument. Of course it must not appear on the face of the paper that to give it effect as the sole will of any testator would be contrary to his intention, or that it is im-

possible to ascertain how he would have it operate as his sole will.

"The litigants in this case are apparently in accord on this primary principle. They seem to be further in agreement upon the important rule made plain in the case of Epperson v. White, supra, that no will, *joint or single* (emphasis ours), can be allowed to postpone the vestiture of titles to a date subsequent to the death of the testator or to provide for such vestiture prior thereto.

"What is earnestly debated is whether the will in the present instance can be treated as two individual wills, independently operative, or whether it must be said that under the terms of the document, treated as two wills, neither was subject to full execution prior to the effective date of the other."

The will involved in the instant case, which has been quoted above, even if it be treated as exclusively the will of P. P. Owens, was intended, as such, to postpone the vestiture of titles to real estate devised by same, to a date subsequent to the death of the testator, that is to say, until the death of Mrs. Anna Owens if, as has occurred, she survived him.

It appears from the record in this cause that title to part of the lands owned by Mr. and Mrs. P. P. Owens was held by them as tenants by the entireties, and that some of the bank stocks owned by them was issued in their joint names.

The alleged will as produced, was found in an envelope which said on it in print, "It's Inside!" On the outside of this envelope, in the same handwriting as the document contained therein, appears, "This is not to be opened until our death. P. P. Owens and Anna." Also, inside

of the envelope on a separate piece of paper, and in the same handwriting, was, "Our Will". In the opinion of this Court, the writing on the outside of the envelope and the writing on the separate piece of paper inside of the envelope, should be treated as a part of the document purporting to be a will itself, just as much as if same had been numbered pages and clipped to the will proper, as parts of same. In any event, in the testamentary document, itself, the word "our" appears five times, manifesting the obvious intention of P. P. Owens that the will should not take effect until after the death of both himself and his wife, Anna. The will says, "Here is *our* will—at *our* death—all in *our* name, goes to W. M. Owens and Elvis Owens at our death." And the final sentence is, "Everything Else goes to them at *Our* Death for John Owens has got His part of Ething." (Emphasis ours).

Attorneys for appellant undertake to avoid the significance and conclusion thus drawn, by insisting that the will should be construed as devising the property to W. M. Owens and Elvis Owens at the death of P. P. Owens or Anna Owens, whichever occurred last, reserving a life estate to the survivor in the meantime. This is an ingenious theory, but it cannot be permitted to override the plain language of the testamentary instrument, itself. Furthermore, we are able to refute this theory, not only on principle, but which authority as well. In the case of Huffines v. Minchey, 34 Tenn. App. 504, 240 S. W. (2d) 259, 260, there was involved the question of validity of what purported to be a joint will of B. H. Minchey and his wife, Mrs. Thelma Minchey, dated March 28, 1949. There was also involved in a separate cause which was consolidated with and tried along with the case involving the validity of the joint will, the question of probate of

an individual will made by B. H. Minchey under date of July 31, 1944. No attack was made on the will of July 31, 1944, except that it had been revoked by the alleged will of March 28, 1949. The Circuit Judge before whom these consolidated causes were tried, held invalid the joint will of B. H. Minchey and Thelma Minchey, his wife, dated March 28, 1949. The Court of Appeals affirmed this judgment on the authority of Epperson v. White, 156 Tenn. 155, 299 S. W. 812, 813, 57 A. L. R. 601, and Richmond v. Richmond, 189 Tenn. 625, 227 S. W. (2d) 4, 6. On the appeal to the Court of Appeals, one of the assignments of error was:

" 'The Court erred in construing said paper writing as not taking effect upon the death of the said B. H. Minchey, and as thus invalid as his will, for the reason, that, its whole scope and tenor considered, the dispositions of his property made therein by the said B. H. Minchey were intended to be and were effective as of the date of his death, such dispositions being as follows:

" 'To his wife, Thelma Minchey, an estate for life or widowhood, by implication, in all his property, subject to his debts;

" 'To Kenneth Huffines a life estate, subject to that of Thelma Minchey, in testator's entire interest and estate in the tract of land described in the will, with the remainder in fee to James Richard Huffines;

" 'All the remainder of his property, subject to an estate for life or widowhood of Thelma Minchey therein, one-half to the persons who shall constitute his heirs at law at the time of the death or remarriage of testator's widow, Thelma Minchey, and one-half

to the persons who shall constitute her heirs at law.' "

After reviewing the authorities referred to above, the opinion of the Court of Appeals for the Middle Division, written by Howell, J., says at page 513 and continuing on page 514 of 34 Tenn. App., at page 263 of 240 S. W. (2d), as follows:

"In applying these rules to the will before us we think that the clearly expressed intention of the testators was that the will was not to be probated until after the death of the last survivor, and that therefore they undertook to dispose of their property in a manner not authorized by law.

"These testators owned separate property real and personal and the will could not be carried out until the death of the survivor. As expressing the intention of the testators the will in the first few lines is referred to as 'our last will,' it then directs that 'our burial expenses of each of us is to be paid', and that 'a nice monument be erected to the grave of each of us,' and then that 'all of the just debts of either or each of us is to be paid consisting of expenses of Hospital bills, doctors bills and expenses of careing [sic] for us in our sickness at any and all times before our deaths', and again 'after the death of each of us all the rest of our property to be divided equally between both of our heirs this will is not to take effect until the death of each of us.'

"It thus appears that the terms of this purported will could not be carried out until after the deaths of both B. H. Minchey and Mrs. Thelma Minchey and that it is impossible to ascertain how to administer the estate after B. H. Minchey's death and while

his widow Mrs. Thelma Minchey is still alive.

"We are therefore of the opinion that B. H. Minchey and his wife Thelma Minchey intended to make a joint disposition of their separate properties and the disposition thus made by the will in question is not sanctioned by law.

"The assignments of error are overruled and the judgment of the Circuit Court that the will of March 28, 1949 signed by B. H. Minchey and his wife Thelma Minchey is not a valid will and testament of B. H. Minchey and that the will dated July 31, 1944 offered for probate by Mrs. Thelma Minchey does constitute a true whole and last will of B. H. Minchey and is entitled to probate as such, is affirmed."

It thus appears that while the authority of Jones v. Myers, 178 Tenn. 24, 154 S. W. (2d) 245, can save the appellant from any objection incident to the addition of "and wife Anna", regardless of whether same was signed by Mrs. Owens or Mr. Owens, it can not override for him, the rule that no will, *joint or single,* can be allowed to postpone the vestiture of titles to a date subsequent to the death of the testator or to provide for such vestiture prior thereto.

In granting the motion for peremptory instruction at the trial in the Circuit Court, the learned trial judge, the Hon. John F. Kizer, said to the jury:

"Gentlemen of the jury, a motion has been made in this case to direct you to return a verdict in favor, direct you to return a verdict against this will on the grounds that the testator did not intend for the will to take effect immediately upon his death; that he intended it as a joint will of his wife and himself, and that such joint will, under the conditions shown in this record, is invalid as a matter of law.

"There are two things that are necessary to validate any testamentary gift or any will: the first is that the testator must comply with the statutory requirements. This man has complied with the statutory requirements, this testator has, in that the will was a holographic will written in his own handwriting and signed by himself, but in addition to meeting the statutory requirements, it is necessary that his testamentary intent be clear that he intended to dispose of his property after his death, and I believe from the construction of this will as a whole, which the Court has read and you gentlemen have not read, the use of the term "our" and the signing of the will by himself and his wife indicated on his part conclusively and intentionally that this will was to take effect at the death of the survivor and being so, there is no clear intention that it was to be effectual as a will on his death, or to dispose of his property at his death, and for that reason, for those reasons, I am directing you to return a verdict against this will. So, let the motion for a directed verdict be sustained."

We agree with this statement of the learned trial judge and think it is a correct statement of the law applicable to this case.

■■ There is one other question presented by appellants' counsel for determination by this Court. It is contended that even if the paper writing presented as the holographic will of P. P. Owens be not valid as such in any other particular, that the last sentence of same, "Everything Else goes to them (referring to W. M. Owens and Elvis Owens) at our Death for John Owens has got His part of Ething", should be held valid and

subject to probate as and for the will of P. P. Owens. The theory of this contention is that this sentence amounts to a valid will disinheriting John Owens, and that even if no other part of the will is valid, this part should be permitted to survive. Authorities cited in the brief of appellants in support of this contention do not, in the opinion of this Court, sustain such contention. In any event, this is a proposition which was not presented in the trial court. It is presented for the first time in the Court of Appeals. We think it comes too late, and is without merit.

All of the assignments of error are overruled and the judgment of the Circuit Court of Gibson County is affirmed. This cause is remanded for further proceedings in conformity with the judgment of that Court and of this Court. The costs of the appeal will be paid by plaintiffs in error and their sureties on the appeal bond.

Avery, P. J. (W. S.), and Carney, J., concur.